

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

June 23, 1958

General Dallas J. Matthews
Director, Texas National Guard
    Armory Board
Austin, Texas

Opinion No. WW-460

Re: The authority of
the Texas National
Guard Armory Board
to sell property
located at Waco and
Houston, Texas.

Dear General Matthews:

In a recent opinion request of this office you
state the following:

"The Texas National Guard Armory Board
owns two tracts of land which it is desirous
of offering for public sale to the highest
bidder.

"One of these tracts of land is located
in Houston, Harris County, Texas, on Post Oak
Road. This tract of approximately ten acres, is
unimproved and was acquired by the Board in 1938
(1947?) by conveyance from the Houston Cavalry
Club. The copy of the deed to this property is
enclosed for your convenience. At the time of its
acquisition, the Armory Board intended to construct
thereon facilities for use of a unit of the Texas
National Guard. However, it subsequently developed
that the property was not suitable for such use and
it has remained vacant for several years. At no
time since its acquisition has there been any lien
or debt against this tract of land. Through the
years it has increased in value due to the growth
of the City of Houston and is presently appraised
at something in excess of $100,000.

"The second piece of property with which the
Board is concerned is known as the Grand Lodge Build-
ing in downtown Waco, Texas. This property consists
of a lot and a two-story building which was acquired

from the Grand Lodge of Texas by deed, a copy
of which is enclosed. You will note that there
was a deferred consideration secured by a deed
of trust lien against the premises. The debt
was paid off in 1956, and the lien against the
property was released at that time. A copy of
the release is also enclosed herewith for your
convenience.

"Both of the properties above referred to
are now surplus to and in excess of the needs
of the Texas National Guard Armory Board, which
desires to sell them to the highest bidder for
cash and apply the proceeds of the sale to the
construction of other armories throughout the
State. In this connection, your attention is
respectfully invited to Article 5890b, V.C.S.,
the statute which created and empowered the
Armory Board, and specifically to Section 2(f). . .

"Also pertinent to this inquiry is Section
3 of Article 5890b, with reference to transfer
of property by the Board to the State of Texas.

"In addition, we would appreciate your view
as to the procedure to be followed in effecting
such sale if you conclude that it is authorized."

Section 1 of Article 5890b, V.C.S., creates the
Texas National Guard Armory Board.

Section 2 of said Article makes it the duty of the
Texas National Guard Armory Board to

". . . have charge of the acquisition, con-
struction, rental, control, maintenance and opera-
tion of all Texas National Guard Armories. . ."

This duty of the Board is likewise expressed in
the emergency clause of the 1937 and 1939 amendments to Article
5890b, V.C.S.

Acts 45th Leg., R.S., p. 740, ch. 366, Section 3
reads in part as follows:

"The fact that it is essential that the exist-
ing law relative to Texas National Guard Armories
be amended so as to authorize and permit the is-
suance of securities to obtain funds for construc-
tion and acquisition of one or more Armories and

thereby take advantage of the favorable opportunity existing at this time for the securing of funds for the purposes contemplated by this Act, . . ." (Emphasis added.)

The second Act, Section 3 reads in part as follows:

"The fact that it is essential that the existing law relative to Texas National Guard armories be amended so as to authorize and permit the immediate issuance of securities to obtain funds <u>for construction and acquisition of armories</u> and thereby take advantage of grants and loans from the Federal Government and others for armory purposes, creates an emergency. . ." (Emphasis added.)

Considering the above quoted portion of Section 2 and the above quoted portions of the emergency clauses to Acts 1937 and 1939 we see that the primary purpose for the creation of the National Guard Armory Board was to provide a method for obtaining armories for the Texas National Guard. In furtherance of this aim the Legislature by the provisions of Section 2 has delegated to the National Guard Armory Board "all the powers necessary and convenient for the accomplishment of such duty including but without being limited to the following express powers". Section 2 of Article 5890b then sets out in lettered paragraphs (a) through (i) a number of express powers which may be utilized by the Board to achieve and accomplish its primary purpose and duty, i.e., the acquisition of National Guard Armories. One of the enumerated express powers contained in Section 2 is that found in Section 2(f) which reads in part:

"To acquire, by gift or by purchase, for use as building sites or for any other purposes deemed by said Board to be necessary or desirable in connection with or for use of units of the Texas National Guard, property of any and every description, whether real, personal or mixed, including, but without limitation on the foregoing leasehold estates in real property, and hold, maintain, sub-lease, convey and exchange such property, in whole or in part, and/or to pledge the rents, issues and profits thereof in whole or in part;
. . ."

Section 2(g) likewise authorizes the conveyance and exchange of property owned by the Board in the following language:

> "To construct buildings on any of its
> real property, whether held in fee simple or
> otherwise, and to furnish and equip the same
> and to hold, manage and maintain all of said
> property and to lease to the State of Texas,
> in the same manner as hereinafter provided
> with respect to other property, the buildings,
> and the sites thereon situated, which it may
> construct at Camps Mabry, Hulen and Wolters,
> and to lease and sub-lease, convey and exchange,
> in whole or in part, all of its property not
> located in either of said camps, . . . ." (Em-
> phasis added.)

By the provisions of Section 2(h) the Legislature
has authorized the Board to borrow money and to issue and sell
bond debentures and other evidences of indebtedness with the
purpose of acquiring sites for armories and for the construc-
tion of armories, said indebtedness to be secured by pledge
of the rents, issues and profits of the property held by the
Board.

Clearly the Legislature has delegated to the Texas
National Guard Armory Board the authority to acquire, control,
incumber, exchange, and convey property in furtherance of its
primary duty to obtain armories for the Texas National Guard;
however, the Legislature has provided by Section 3 of Article
5890b that when the indebtedness against any of the property
so obtained by the Board for armory purposes is extinguished,
the Board's delegated authority and control over such property
terminates and thenceforth is invested directly in the Legis-
lature. Section 3 reads as follows:

> "As and when any of the property owned by
> the Board shall be fully paid for, free of all
> liens, and all debts and other obligations in-
> curred in connection with the acquisition or
> construction of such property have been fully
> paid, the Board shall donate, transfer and con-
> vey such property, by appropriate instruments
> of transfer and conveyance, to the State of Texas,
> and such instruments of transfer and conveyance
> shall be kept in the custody of the Adjutant Gene-
> ral's Department."

At first glance Section 3 appears to be incompatible
with Section 2(f) and 2(g). However, the three sections are eas-
ily harmonized. As pointed out above the primary function of
the National Guard Armory Board is to provide armories for the
Texas National Guard. In furtherance of this function the Board
is authorized by Section 2(f) to acquire by gift or purchase

real property. Undoubtedly many times a situation may arise wherein the property so acquired is not directly suited for an armory site and is never utilized as such by a Texas National Guard unit. And undoubtedly situations will arise where property is suited for armory purposes at the time of acquisition but ceases to be so suited by the time armory construction can be financed and commenced. By Section 2(f) the Legislature has contemplated such occurances and has provided for the conveyance and exchange by the Board of such unsuitable property, in order that the Board might proceed with its paramount or primary function, i.e., the acquisition and construction of armories for the Texas National Guard.

However, we believe it is quite plain that by the provisions of Section 3 the Legislature intended to obtain direct control of the armories acquired or constructed by the National Guard Armory Board and utilized by Texas National Guard units once the armories were free and clear of the incumbrances of acquisition and construction. This construction of Sections 2(f), 2(g) and 3 gives recognition to all three sections and likewise fulfills the expressed purpose of Article 5890b.

In the instant case the tract of land located in Harris County was acquired by the Board for the purpose of constructing facilities for a Texas National Guard unit but before this property could be developed by the Board and put to such a use by a Texas National Guard unit it became unsuitable for such purpose. We believe the Legislature had this type of situation in mind when it provided under Section 2(f) that the National Guard Armory Board might "convey and exchange such property". Therefore, we inform you that the Texas National Guard Armory Board is authorized to sell the property located in Harris County, Texas, as authorized by Section 2(f) of Article 5890b, V.C.S.

In a conference with the attorneys for the National Guard Armory Board we obtained further information concerning the property in Waco, Texas. This property was acquired for and used as an armory by a Texas National Guard unit and was so used at the time of the retirement of the debt of acquisition against the property in 1956. We believe that the Waco property falls directly under the provisions of Section 3 of Article 5890b and that this property is now under the direct control of the Legislature. We therefore inform you that the Texas National Guard Armory Board is not authorized to sell the property described in your opinion request located in Waco, McLennan County, Texas.

You have also asked the procedure to be followed in effecting such sale if we conclude that a sale is authorized.

While we believe Section 2(f) authorizes the Board to sell property such as that located in Harris County, no method or procedure of sale is set forth by the Legislature in Article 5890b. We believe under this circumstance, the Legislature has left the procedure to be followed for such a sale within the discretion of the Board. However, the Legislature has provided procedures for the sale of real property by other State departments, instrumentalities, and agencies. In this respect we cite to you as a guide the procedure set forth for the disposition of realty at public sale by counties in Article 1577, V.C.S., and for disposition of public free school land as set forth in Article 5421c-3, V.C.S.

## SUMMARY

The tract of land free of all liens and incumbrances of approximately 10 acres on Post Oak Road, Houston, Harris County, Texas, acquired by the Texas National Guard Armory Board for armory purposes but never utilized as such by a Texas National Guard unit may be sold at public sale by the Texas National Guard Armory Board.

The real property acquired by the Texas National Guard Armory Board which is free of all liens and incumbrances, located in Waco, McLennan County, Texas, known as the Grand Lodge Building and utilized as an armory by a Texas National Guard unit is not subject to sale by the Texas National Guard Armory Board but its disposition is under the direct control of the Legislature of the State of Texas.

Very truly yours,

WILL WILSON
Attorney General of Texas

By Milton Richardson (JMK)

Milton Richardson
Assistant

MR:bh

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

L.P. Lollar

Richard B. Stone

REVIEWED FOR THE ATTORNEY
GENERAL BY:

W.V. Geppert